E. P. Keiffer (SBN 11181700)
Shane A. Lynch (SBN 24065656)
Wright Ginsberg Brusilow P.C.
325 North St. Paul St., Suite 4150
Dallas, Texas  75201
Telephone:  (214) 651-6500
Facsimile:  (214) 744-2615
Email:  pkeiffer@wgblawfirm.com
Email:  slynch@wgblawfirm.com

Attorneys for the Plan Agent

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
|  | § |  |
| SYMBIO SOLUTIONS, INC., | § | CASE NO. 10-30134 (BJH) |
|  | § |  |
| DEBTOR. | § |  |
|  | § |  |
| RON CADDELL, PLAN AGENT FOR | § |  |
| SYMBIO SOLUTIONS, INC., | § |  |
|  | § |  |
| PLAINTIFF, | § |  |
| V. | § | ADVERSARY NO. _____ |
|  | § |  |
| FAVORITE HEALTHCARE STAFFING, INC., | § |  |
|  | § |  |
| DEFENDANT. | § |  |

**COMPLAINT**

Comes now plaintiff, Ron Caddell, Plan Agent for Symbio Solutions, Inc. (the "Debtor"), and complains of defendant, Favorite Healthcare Staffing, Inc. ("FHS") and alleges as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction over this proceeding pursuant to United States Bankruptcy Code[1] §§ 547, 549 and 550 and 28 U.S.C. §§ 1334 and 157. This is a core

---

[1] 11 U.S.C. § 101 *et seq*. (the "Code").

proceeding under 28 U.S.C. § 157(b)(2)(A), (F), and (O). Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1409.

## Parties

2. The Plan Agent is an individual residing in Rowlett, Texas.

3. FHS is a corporation registered in the state of Kansas. An officer of FHS will be served with a copy of this complaint at its principal office, which is located at 7255 W. 98th Terrace, Building 5, Suite #150, Overland Park, Kansas 66212.

## Facts

4. Prior to selling substantially all of its assets pursuant to a sale under section 363 of the Code, the Debtor operated as an online marketplace that allowed staffing companies and hospitals to connect. Several hospitals that were in need of nurses and other medical professionals entered into contracts with the Debtor, pursuant to which the Debtor would create an online marketplace through which third-party vendors such as FHS would provide medical professionals to hospitals.

5. Upon completion of work at a hospital, vendors such as FHS would forward invoices on to the Debtor, which then invoiced the hospital that received the billed for services. The hospital would then pay the Debtor's invoices directly to the Debtor, which would then forward payment to the vendor that provided the service, less the Debtor's fee – usually 3%. However, at no time was the Debtor's obligation any more than to pay a claim or debt.

6. In the ninety days prior to the filing of the Debtor's bankruptcy petition, the Debtor, under pressure from both the hospitals and vendors, entered into new contracts (each, a

"New Contract") with four hospital systems – Kaleida Health ("Kaleida")[2], Regency Hospital Company ("Regency")[3], University of Utah on behalf of its University Healthcare Hospitals and Clinics ("Utah")[4] and VHS San Antonio Partners, L.P. *d/b/a* Baptist Health System of San Antonio ("Baptist" and collectively with Kaleida, Regency and Utah, the "Preference Hospitals")[5] – that it had been serving for some time. The New Contracts were not required, as the prior contracts with the Preference Hospitals had not expired, and were not set to do so for some time.

7. The New Contracts with Kaledia, Regency and Utah provided that instead of forwarding all funds to pay service providers on to the Debtor and allowing the Debtor to pay service providers, those hospitals would pay service providers directly, with Kaledia, Regency and Utah only remitting the Debtor's fee directly to the Debtor.

8. The New Contract with Baptist provided that the *entire* amount invoiced, including the Debtor's fee, would be forwarded to service providers, and service providers would then remit to the Debtor its fee.

9. At the time that the Preference Hospitals entered into the New Contracts with the Debtor, the Debtor was having problems paying vendors; therefore, the Preference Hospitals entered into the New Contracts with the Debtor in order to assure that payments intended for the

---

[2] Kaleida entered into its New Contract with the Debtor on October 27, 2009.

[3] Regency entered into its New Contract with the Debtor on October 5, 2009.

[4] Utah entered into its New Contract with the Debtor on November 4, 2009.

[5] Baptist entered into its New Contract with the Debtor on September 15, 2009. While this date is outside of the 90 day preference period, case law supports the Plan Agent's assertion that Baptist's New Contract was none-the-less a preferential transfer. *See In re Herchinger Inv. Co of Deleware, Inc.* 326 B.R. 282 (Bankr. D. Del. 2005).

vendors that provided such hospitals services would not be subject to the Debtor's continuing financial difficulties.

10. FHS is a national staffing agency that has offices, and provides staffing services to hospitals, in several cities and states. Symbio had a business relationship with FHS's offices in San Antonio, Texas and Buffalo, New York.

11. FHS provided services to Baptist after those hospitals entered into the New Contracts with the Debtor (FHS's contract was not modified).

12. FHS received $51,435.17 (the "Preference Payments") from Baptist for services rendered to the hospital between the New Contract's effective date (which was during the preference period) and the date the Debtor filed for bankruptcy under chapter 11 of the Code. Had these transfers of the right to receive the funds not been made, could have been paid to the Debtor.

13. Additionally, the Plan Agent inadvertently made incorrect distributions totaling $1,553.02 (the "Overpayments") to FHS.[6] Though the Court confirmed the Debtor's *Amended*

---

[6] $772.09 of this was directed to FHS's San Antonio office, and $780.93 was directed to FHS's Buffalo office.

FHS filed a single proof of claim for both offices. In the proof of claim, FHS claimed that the San Antonio office was owed $10,983.65, and that the Buffalo office was owed $3,665.55. The Plan Agent objected to these claims by his *Second Omnibus Objection to Claims* (the "Omnibus Objection").

The Plan Agent's objection to the San Antonio office's claim was based on setoff, post-petition payment and that the San Antonio Office received preferential payments; the Plan Agent asked that the San Antonio office's claim be allowed at $0.

The Plan Agent's objection to the Buffalo office's claim was based on post-petition payment; the Plan Agent asked that the Buffalo office's claim be allowed at $3,655.55.

The Court sustained the Omnibus Objection as it related to both of FHS's offices. However, the Plan Agent inadvertently made distributions to the San Antonio office and the Buffalo office based on respective claims of $11,213.03 and $14,051.52 for distributions of $772.09 and $1,056.54, respectively. Based on the Court's order sustaining the Omnibus Objection, the San Antonio office should have received no distribution, and the Buffalo office should have received a distribution of approximately $275.61.

*Chapter 11 Plan of Liquidation* (the "Plan"), the Plan only provided for distributions to a creditor on the allowed amount of that creditor's claim.

## Count One

### Avoidable Preference – Code § 547

14. Paragraphs 1-13 of this complaint are realleged and incorporated by reference.

15. Prior to entering into the New Contracts, the Debtor was entitled to receive full payment on any invoices generated by vendors it placed with a Preference Hospital. After the New Contracts were executed, the Debtor's interest in such invoices decreased from full payment on such invoices to as little as no direct payment – Baptist paid its vendors the entire invoiced amount, including the Debtor's fee.[7] The Debtor's interest in the payments of Kaleida, Regency and Utah decreased from 100% of the invoiced amount to just 3% of the invoiced amount.

16. The New Contracts were entered into for the benefit of each of the vendors, including FHS, that provided services to Preference Hospitals because the New Contracts allowed such vendors to receive payment on an antecedent debt which Debtor owed to FHS directly from the Preference Hospitals at a time when the Debtor was insolvent and having trouble paying its vendors.

17. By receiving the Preference Payments directly, pursuant to the New Contracts, FHS received more on those antecedent debts than it would have under a case under Chapter 7 of the Code. For the foregoing reasons, the New Contracts and the Preference Payments themselves are avoidable pursuant to section 547(b) of the Code.

---

[7] To this day, several of the vendors that received the Debtor's fee from Baptist have not forwarded the fee to the Debtor.

### Count Two

### Avoidable Postpetition Transfer – Code § 549

18. Paragraphs 1-17 of this complaint are realleged and incorporated by reference.

19. The Overpayments were made after commencement of the Debtor's bankruptcy case, and were not authorized by the Code, the Court or the Plan. For the foregoing reasons, the Overpayments are avoidable postpetition transfers pursuant to Code § 549(a).

### Count Three

### Return of the Preference Payments and the Overpayments – Code § 550

20. Paragraphs 1-19 of this complaint are realleged and incorporated by reference.

21. As noted above, the New Contracts are avoidable pursuant to section 547(b) of the Code.

22. The Preference Hospitals executed the New Contracts for the benefit of vendors, including FHS.

23. FHS received a benefit from the New Contracts by receiving the Preference Payments.

24. The value of the New Contracts, as they relate to FHS, is the amount of the Preference Payments. Because FHS is "the initial transferee of such transfer or the entity for whose benefit such transfer was made," the Debtor is entitled to recover the value of the transfer – the Preference Payments.

25. As noted above, the Plan Agent made distributions under the Plan to FHS that were not approved by the Court or the Code. The Court approved the Plan, but the Plan did not provide for payment on claims that were not allowed by the Court. Therefore, the Debtor is entitled to recover the Overpayments.

**Prayer**

The Debtor respectfully prays that the Court grant and enter judgment as follows:

(1) avoiding the New Contracts and the payments to vendors in the amount of the Preference Payments, $51,435.17, pursuant to section 547(b) of the Code;

(2) avoiding the Overpayments, in the amount of $1,553.02, pursuant to section 549(a) of the Code;

(3) granting a money judgment in the amount of the Preference Payments, $51,435.17, to the Debtor pursuant to section 550(a)(1) of the Code;

(4) granting a money judgment in the amount of the Overpayments, $1,553.02, to the Debtor pursuant to section 550(a)(1) of the Code;

(5) awarding costs and expenses incurred by the Debtor in this adversary proceeding including, without limitation, reasonable attorney fees as may be allowable; and

(6) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

 //s// *Shane A. Lynch*
E. P. Keiffer (TX Bar No. 11181700)
Shane A. Lynch (TX Bar No. 24035872)

**WRIGHT GINSBERG BRUSILOW P.C.**
325 N. St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone: (214) 651-6500
Facsimile: (214) 744-2615
Email: pkeiffer@wgblawfirm.com
Email: slynch@wgblawfirm.com

**ATTORNEYS FOR THE PLAN AGENT**